IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Brian Keith Nesbitt, | ) | C/A No. 0:13-2602-RMG-PJG |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Warden, Tyger River Correctional Institution, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Petitioner Brian Keith Nesbitt ("Nesbitt"), a self-represented state prisoner, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter comes before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the respondent's motion for summary judgment. (ECF No. 27.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Nesbitt was advised of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the respondent's motion. (ECF No. 29.) Nesbitt filed a response in opposition. (ECF No. 32.) Having carefully considered the parties' submissions and the record in this case, the court concludes that the respondent's motion for summary judgment should be granted and Nesbitt's Petition denied.

## BACKGROUND

Nesbitt was indicted in May 2005 in Spartanburg County for assault and battery with intent to kill (05-GS-42-1655), assault with intent to kill (05-GS-42-1656), and two counts of resisting arrest (05-GS-42-1657, & -1658). (App. at 161-68, ECF No. 28-1 at 163-70.) Nesbitt was represented by Robert Hatcher, Esquire, and on June 23, 2006 entered a plea of *nolo contendere* to the lesser charges of assault and battery of a high and aggravated nature and assault of a high and aggravated nature, as well as to the two counts of resisting arrest. (App. at 3-12, ECF No. 28-1 at

5-14.)  At a sentencing hearing held June 29, 2006,[1] the circuit court sentenced Nesbitt to ten years' imprisonment for assault and battery of a high and aggravated nature, a consecutive sentence of ten years' imprisonment for assault of a high and aggravated nature, and concurrent sentences of one year imprisonment for each of the charges of resisting arrest.  (App. at 43-44, ECF No. 28-1 at 45-46.)

Nesbitt timely appealed and was represented by Aileen P. Clare, Esquire, of the South Carolina Commission on Indigent Defense, who filed a final brief on Nesbitt's behalf that presented the following claim:

> Did appellant's persistent denial of the state's factual allegations render his *Alford* plea invalid?

(App. at 51, ECF No. 28-1 at 53.)  The State filed a final brief.  (App. at 58-70, ECF No. 28-1 at 60-72.)  On February 8, 2008, the South Carolina Court of Appeals affirmed the decision of the lower court.  (State v. Nesbitt, Op. No. 08-UP-092 (S.C. Ct. App. Feb. 8, 2008); App. at 71-72, ECF No. 28-1 at 73-74.)  The remittitur was issued on February 27, 2008.  (ECF No. 28-3.)

Nesbitt filed a *pro se* application for post-conviction relief on September 24, 2008 ("2008 PCR") in which he raised the following claims:

(a)    Probable cause, malicious prosecution.
(b)    Subject matter jurisdiction.
(c)    Prosecutor's misconduct.
(d)    Plea was not voluntary, intelligent and knowingly.
(e)    Deprived of right to Due Process of Law.
(f)    Ineffective of counsel in General Sessions hearing, and on appeal from the State of South Carolina in the court of appeal.  Fourteenth Amendment.
(g)    [ ] violation, abuse of process on the South Carolina Rules of the Court, and federal rules of the court.
(h)    Invalid proceedings on void indictment.
(i)    Court Rules, order or other processes.

---

[1] At the sentencing hearing, Nesbitt was represented by James E. Hatcher, Esquire.



(j)     Criminal violations.

(k)    Contemporaneous object and rights violations.

(l)     S.C. Code Ann. § 17-25-10.

(m)   The fourteenth amendment, sixth, fourth, and fifth, violations.

(n)    Civil Rights violations.

(o)    Constitutional Rights that are guaranteed to all American citizens.

(p)    Exclusionary Rule for evidence wrongfully obtained.

(q)    Right to Public Trial; Publicity of Proceedings.

(r)    Cruel and unusual punishment 8 eight amendment and fourteenth amendment violation.

(s)    Newly discovered evidence.

(See Nesbitt v. State of South Carolina, 08-CP-42-4995; App. at 73-83, ECF No. 28-1 at 75-85) (errors in original).  The State filed a return and motion to dismiss.  (App. at 84-92, ECF No. 28-1 at 86-94.)  On June 22, 2010, the PCR court held an evidentiary hearing at which Nesbitt appeared and testified and was represented by R. Mills Ariail, Jr., Esquire.  By order filed October 5, 2010, the PCR judge denied and dismissed with prejudice Nesbitt's PCR application.  (App. at 153-60, ECF No. 28-1 at 155-62.)

On appeal, Nesbitt was represented by Wanda H. Carter, Esquire, Deputy Chief Appellate Defender, who filed a Johnson[2] petition for a writ of certiorari on Nesbitt's behalf that presented the following issue:  "Trial counsel erred in failing to fully explain sentencing consequences to petitioner."  (ECF No. 28-6.)  Nesbitt filed a *pro se* response to the Johnson petition and later amended his response.  (ECF Nos. 28-8 & 28-9.)  On October 10, 2013, the South Carolina Court of Appeals denied Nesbitt's petition for a writ of certiorari.  (ECF No. 28-10.)  The remittitur was issued October 28, 2013.  (ECF No. 28-11.)  This action followed.

---

[2] Johnson v. State, 364 S.E.2d 201 (S.C. 1988) (applying the factors in Anders v. California, 386 U.S. 738 (1967) to post-conviction appeals).



## FEDERAL HABEAS ISSUES

Nesbitt's federal Petition for a writ of habeas corpus does not state individual grounds for relief. Rather, he appears to raise a myriad of issues within the petition form as well as a thirty-two page memorandum in support of his Petition. The respondent has organized and summarized Nesbitt's issues as follows:[3]

**Ground One:** Fourth Amendment violation
**Supporting Facts:** no probable cause to arrest (ECF No. 17-1 at 44), excessive force and racial profiling (ECF No. 17-1 at 20);

**Ground Two:** Deficiencies with grand jury and indictment
**Supporting Facts:** "S.C. Code Ann. § 14-9-210 is jurisdictional in nature" (ECF No. 17-1 at 23–26), various assertions that the indictment was "illegal" and procedures were "unlawful" (ECF No. 17-1 at 21, 29, 31, 33, 40–43);

**Ground Three:** Manipulated/falsified documents
**Supporting Facts:** "trial tape transcrip [sic] and photo and documents are not authentic, and have been manipulated and altered" (ECF No. 17-1 at 6), allegations that officers falsified reports and altered pictures and statements (ECF No. 17-1 at 20, 26, 29, 38), Officer Russell signed "all of the affidavits in this case" but had no knowledge of the events (ECF No. 17-1 at 11), "Public Safety R.D. Porter sign the affidavit, but did not have actually observed the fact" (ECF No.17-1 at 39);

**Ground Four:** Brady violation
**Supporting Facts:** surveillance tape footage was suppressed (ECF No. 17-1 at 11), "The Police, and SLED officers, withheld exculpatory evidence that would have negated probable cause. . ." (ECF No. 17-1 at 26), "I (Petitioner) have discovered that prosecutors had deliberately covered up, and withheld evidence, as well as manufactured and altered pictures and statements" (ECF No. 17-1 at 26);

**Ground Five:** Prosecutorial misconduct/malicious prosecution
**Supporting Facts:** "record reveals that action is frivolous or malicious" (ECF No. 17-1 at 8), "Prosecution suppresses material that had a reasonable probability of achieving a different result in the proceeding" (ECF No. 17-1 at 8);

---

[3] Nesbitt's response in opposition to the respondent's motion for summary judgment does not challenge or dispute the respondent's characterization and organization of the grounds for habeas relief in this case. (ECF No. 32.)



**Ground Six:**  Hearing errors
**Supporting Facts:**  "regard to the procedural due process and equal protection. Plea was obtained in violation of due process and is void." (ECF No. 17-1 at 8), "The record will show this court that the hearing that was held on, June 23, 2006 and on June 29, 2006 that errors at that hearing worked to Petitioner's actual and substantial disadvantage infecting the entire trial hearing with error of constitutional dimensions." (ECF No. 17-1 at 31);

**Ground Seven:**  Ineffective assistance of plea counsel
**Supporting Facts:**  plea counsel conspired with prosecution (ECF No. 17-1 at 19, 26), Petitioner's plea wasn't voluntary due to counsel's performance and coercion (ECF No. 17-1 at 28, 34–36, 38);

**Ground Eight:**  Errors by trial court
**Supporting Facts:**  "the court trail [sic] tape would show that the Judge participated in the discussions. was not a lesser offense . . . did not give the maximum or the mandatory minimum penalty or the possible penalty" (ECF No. 17-1 at 9); "The charges were not the lesser included charge of the alleged crime charged in the illegal indictment." (ECF No. 17-1 at 27), "The record does not show what inquiries were made by the arraigning judge to confirm that the plea was made voluntarily and knowingly." (ECF No. 17-1 at 36);

**Ground Nine:**  Alteration of sentencing sheet
**Supporting Facts:**  "you will find that the sentencing sheet has been altered and that deficiency in the process nullified any form Plaintiff signed" (ECF No. 17-1 at 11);

**Ground Ten:**  Ineffective assistance of appellate counsel
**Supporting Facts:**  "appellate attorney's failed to assert claims on direct appeal, and appeal from writ." (ECF No. 17-1 at 5), "Deputy Chief Appellate Defender, Wanda H. Carter, and the Appellate Division, has from inception intentionally obstructed Justice, by act that has obstructed impeded, and hindered the administration of justice." (ECF No. 17-1 at 11), "Petitioner has been repeatedly [sic] and consistently, denied adequate legal counsel from incept [sic], and have been denied the fundamental rights of access to the courts. . . ." (ECF No. 17-1 at 32), "Jimmy or James or Robert Hatcher, Wanda H. Carter, Aileen P. Clare, and R. Mills Ariail Jr., Greenvill's [sic] solicitor's son (Bob Ariail) have all conspired with the state by failure to act with reasonable diligence and promptness in representation of Petitioner, failure to keep Petitioner reasonably informed about status of litigation, failure to promptly comply with reasonable requests for information, and failure to timely respond to letters from commission on lawyer conduct requesting responses to Petitioner's complaints." (ECF No. 17-1 at 35–36; see also ECF No. 17-1 at 39);

**Ground Eleven:**  Conspiracy
**Supporting Facts:**  Petitioner names the following as part of a conspiracy to obstruct justice: Public Defender Hatcher, Judge Mark Hayes, Assistant Solicitor Bob Coler,



Court Reporter Michael C. Watkins, Spartanburg County Police, Deputy Chief Appellate Defender Wanda H. Carter, Attorney General Henry McMaster, Assistant Attorney General Michelle J. Parsons, Chief Attorney Joseph L. Savitz, III from the S.C. Commission on Indigent Defense, and Judge Roger L. Couch (ECF No. 17-1 at 36); he also states that the grand jury foreman "committed an offense of perjury, as well as assisted the other conspirators" (ECF No. 17-1 at 41).

(Pet., ECF No. 1.)

## DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate.  Once the moving party makes this showing, however, the opposing party may not rest upon mere



allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial.  See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322.  Further, while the federal court is charged with liberally construing a petition filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists.  Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## B.    Habeas Corpus Standard of Review

In accordance with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), claims adjudicated on the merits in a state court proceeding cannot be a basis for federal habeas corpus relief unless the decision was "contrary to, or involved an unreasonable application of clearly established federal law as decided by the Supreme Court of the United States," or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d)(1), (2).  When reviewing a state court's application of federal law, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Williams v. Taylor, 529 U.S. 362, 410 (2000); see also White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (describing an "unreasonable application" as "objectively unreasonable, not merely wrong" and that "even clear error will not suffice") (internal quotation marks and citation omitted); Harrington v. Richter, 131 S. Ct. 770, 785 (2011); Humphries v. Ozmint, 397 F.3d 206 (4th Cir. 2005); McHone v. Polk, 392 F.3d 691 (4th Cir. 2004).  Moreover, state court factual determinations are presumed to be correct



and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington, 131 S. Ct. at 786 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)); see also White, 134 S. Ct. at 1702 (stating that " '[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement' ") (alteration in original) (quoting Harrington, 131 S. Ct. at 786-87). Under the AEDPA, a state court's decision "must be granted a deference and latitude that are not in operation" when the case is being considered on direct review. Harrington, 131 S. Ct. at 785. Moreover, review of a state court decision under the AEDPA standard does not require an opinion from the state court explaining its reasoning. See id. at 784 (finding that "[t]here is no text in [§ 2254] requiring a statement of reasons" by the state court). If no explanation accompanies the state court's decision, a federal habeas petitioner must show that there was no reasonable basis for the state court to deny relief. Id. Pursuant to § 2254(d), a federal habeas court must (1) determine what arguments or theories supported or could have supported the state court's decision; and then (2) ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding of a prior decision of the United States Supreme Court. Id. at 786. "If this standard is difficult to meet, that is because it was meant to be." Id. Section 2254(d) codifies the view that habeas corpus is a " 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id. (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).



## C.    Exhaustion Requirements

A habeas corpus petitioner may obtain relief in federal court only after he has exhausted his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997), abrogated on other grounds by United States v. Barnette, 644 F.3d 192 (4th Cir. 2011); see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases, 471 S.E.2d 454, 454 (S.C. 1990) (holding that "when the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies."). To exhaust his available state court remedies, a petitioner must "fairly present[] to the state court both the operative facts and the controlling legal principles associated with each claim." Longworth v. Ozmint, 377 F.3d 437, 448 (4th Cir. 2004) (internal quotation marks and citation omitted). Thus, a federal court may consider only those issues which have been properly presented to the state appellate courts with jurisdiction to decide them. Generally, a federal habeas court should not review the merits of claims that would be found to be procedurally defaulted (or barred) under independent and adequate state procedural rules. Lawrence v. Branker, 517 F.3d 700, 714 (4th Cir. 2008); Longworth, 377 F.3d 437; see also Coleman v. Thompson, 501 U.S. 722 (1991). For a procedurally defaulted claim to be properly considered by a federal habeas court, the petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.



**D.     Summary Judgment Motion**

**1.     Procedural Default**

As an initial matter, the respondent argues that, while Nesbitt pursued and exhausted his state remedies via a direct appeal and PCR action, only a part of Ground Seven's ineffective assistance of counsel claims have been preserved for this court's review. (ECF No. 28 at 10-11, 14.) Thus, the respondent argues that most of Nesbitt's habeas grounds are procedurally defaulted. (Id. at 15.) For the reasons discussed below, the court agrees.[4] Moreover, although Nesbitt continues to argue the merits of each ground in his response in opposition to summary judgment, nowhere does he challenge the respondent's arguments that the grounds discussed below are procedurally defaulted. (ECF No. 32.)

**(a)     Ground One**

Nesbitt alleges Fourth Amendment violations to include a lack of probable cause for arrest, excessive force, and racial profiling. (ECF No. 17-1 at 20, 44.) The respondent argues that these issues are procedurally defaulted because they were not raised in Nesbitt's direct appeal. (ECF No. 28 at 17.) Upon review of the record, and as summarized above, the court finds that none of the

---

[4]   The court observes that many of the following issues may have been included by Nesbitt in his *pro se* response and/or amended *pro se* response to the Johnson petition. (ECF Nos. 28-8, 28-9.) However, the PCR court did not rule on them and there is no indication in the record that Nesbitt filed a Rule 59(e) motion asking the PCR judge to make specific findings of fact and conclusions of law for any of these allegations. Therefore, even if these grounds were raised in the PCR action, they would not have been preserved for appellate review under state procedural rules. See Humbert v. State, 548 S.E.2d 862, 866 (S.C. 2001) (holding that an issue muse be raised to and ruled on by the PCR court to be preserved for appellate review); Marlar v. State, 653 S.E.2d 266, 267 (S.C. 2007) ("Because respondent did not make a Rule 59(e) motion asking the PCR judge to make specific findings of fact and conclusions of law on his allegations, the issues were not preserved for appellate review.").



issues asserted in Ground One was raised to, or ruled upon by, the South Carolina Court of Appeals in Nesbitt's direct appeal.  (ECF No. 28-1 at 50-58; 73-74.)

### (b)    Ground Three

Nesbitt alleges the manipulation and/or falsification of some documents.  (ECF No. 17-1 at 6, 11, 20, 26, 29, 38-39.)  The respondent argues that this Ground is procedurally defaulted because Nesbitt did not "present any claim of fabricated evidence on direct appeal, nor did he attempt to challenge the evidence prior to entering his plea."  (ECF No. 28 at 19.)  A review of the record reflects that Nesbitt did not raise the issue of falsified evidence at his plea hearing.  (ECF No. 28-1 at 3-47.)  Further, the records indicates that Nesbitt's Ground Three issues were not raised to, or ruled upon, by the South Carolina Court of Appeals in his direct appeal.  (ECF No. 28-1 at 50-58; 73-74.)

### (c)    Ground Four

Nesbitt alleges that exculpatory evidence, to include surveillance tape footage, was withheld from him by the police and prosecution in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) (establishing that due process requires a prosecutor to disclose material exculpatory evidence to the defendant before trial).  (ECF No. 17-1 at 8, 11-12, 26.)  The respondent argues that Ground Four is procedurally defaulted because it was not raised to, or ruled upon, by the state court in Nesbitt's direct appeal or PCR proceedings.  (ECF No. 28 at 20.)  A review of the record reflects that this issue was not presented in Nesbitt's direct appeal.  (ECF No. 28-1 at 50-58, 73-74.)  Further, this issue was not ruled upon by the PCR judge.  (<u>Id.</u> at 155-62.)

### (d)    Ground Five

Nesbitt alleges prosecutorial misconduct and malicious prosecution.  (ECF No. 17-1 at 8.)  The respondent asserts that such issues are procedurally defaulted because they were not "raised and



ruled upon in state court." (ECF No. 28 at 22.) A review of the record reflects that this issue was not presented in Nesbitt's direct appeal, nor was it ruled upon in his PCR action. (ECF No. 28-1 at 50-58, 73-74, 155-62.)

(e)     **Ground Six**

Nesbitt alleges that errors at his plea hearing resulted in a denial of due process and equal protection. (ECF No. 1 at 8, 31.) The respondent argues that this claim is also procedurally defaulted. (ECF No. 28 at 22.) The record reflects that Nesbitt did not raise the issue of hearing errors in his direct appeal and that the PCR court did not rule on any such issues. (ECF No. 28-1 at 50-58, 73-74, 155-62.)

(f)     **Part of Ground Seven**

Nesbitt alleges numerous claims against his plea counsel, which the respondent has grouped as Ground Seven. (ECF No. 17-1 at 28; ECF No. 28 at 22.) The respondent concedes that Nesbitt's "claim that his plea was not voluntarily and knowingly made based on plea counsel's ineffective assistance of counsel has been preserved" for this court's review and it is discussed below. (ECF No. 28 at 26.) However, the respondent argues that Nesbitt's claim alleging that plea counsel conspired with the state has been procedurally defaulted. (Id.) A review of the record reflects that the PCR court did not rule on Nesbitt's conspiracy claim.[5] (ECF No. 28-1 at 155-162.)

(g)     **Ground Nine**

Nesbitt alleges an alteration of his sentencing sheet. (ECF No. 17-1 at 11.) The respondent asserts that such a claim is procedurally defaulted because it was not raised to, and ruled upon by,

---

[5] Nesbitt's response further alleges that plea counsel was ineffective in failing to make a motion for a change of venue. (ECF No. 32 at 2-3.) However, the PCR court did not rule on this issue. (ECF No. 28-1 at 155-62.) Thus, to the extent Nesbitt is attempting to raise such a claim in this habeas action, it is likewise procedurally defaulted.



a state court.  (ECF No. 28 at 30.)  The record reflects that Nesbitt did not raise the issue of a sentencing sheet alteration or error on direct appeal, nor did the PCR court rule on such an issue. (ECF No. 28-1 at 50-58, 73-74, 155-62.)

### (h)    Part of Ground Ten (Appellate Counsel)

Nesbitt alleges ineffective assistance of his appellate counsel.  (ECF No. 17-1 at 5, 11, 32, 35-36, 39.)  The respondent argues that Nesbitt's claim that his direct appeal counsel was ineffective has been procedurally defaulted because this issue was not raised to, or ruled upon by, the PCR court.  (ECF No. 28 at 30.)  A review of the record indicates that the PCR court did not rule on any issue associated with Nesbitt's direct appeal counsel.  (ECF No. 28-1 at 155-62.)

### (i)    Ground Eleven

Nesbitt alleges that attorneys and judges who presided over his state court proceedings were involved in a conspiracy.  (ECF No. 17-1 at 36, 41.)  The respondent argues that, to the extent this allegation may be construed as a due process claim, it is procedurally defaulted.  (ECF No. 28 at 30.) A review of the record reflects that Nesbitt's conspiracy claim was not presented on direct appeal and the PCR court did not rule on this issue.  (ECF No. 28-1 at 50-58, 73-74, 155-62.)

### 2.    Nesbitt Presents No Argument to Excuse Default

Because the court finds that the above-listed habeas grounds are procedurally defaulted, or barred from federal habeas review, such claims may be considered by a federal court only if the petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  Coleman, 501 U.S. at 750.  A petitioner may establish a fundamental miscarriage of justice by showing that he is actually innocent of the crime for which he was convicted.  However, to establish "actual innocence," a petitioner must produce new reliable



evidence that was not presented at trial to establish his factual innocence. Royal v. Taylor, 188 F.3d 239 (4th Cir. 1999); see also Schlup v. Delo, 513 U.S. 298, 324, 327 (1995) (stating that to demonstrate "actual innocence," a petitioner must present "new reliable evidence . . . that was not presented at trial" and "show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt"). Nesbitt's response in opposition to the respondent's motion for summary judgment provides no arguments to meet this standard and Nesbitt has failed to demonstrate that, based on any new reliable evidence, it is more likely than not that no reasonable juror would have found him guilty. See Schlup, 513 U.S. at 327-29. Accordingly, the above-discussed grounds for habeas relief are procedurally barred from federal habeas review.

### 3.    Claims that are not cognizable–Grounds Two, Eight, and Ten (PCR Counsel)

In Ground Two, citing S.C. Code Ann. § 14-9-210, Nesbitt alleges a lack of jurisdiction based on deficiencies with the grand jury and indictment process. (ECF No. 17-1 at 21, 23-26, 29, 31, 33, 40-43.) In Ground Eight, Nesbitt asserts errors by the plea/sentencing court. (Id. at 9, 27, 36.) The respondent argues that Grounds Two and Eight are not cognizable because they assert errors of state law and do not involve an improper application of federal law.[6] (ECF No. 28 at 18, 27.) Nesbitt's response in opposition to the motion for summary judgment alleges that his indictments were not signed by a grand jury foreperson. (ECF No. 32 at 4.) Nesbitt further reiterates allegations associated with errors purportedly made by the plea/sentencing court. (Id. at 10.)

---

[6] The court observes that the respondent also alleges that Ground Nine, in addition to being procedurally defaulted, fails to raise a constitutional issue. (ECF No. 28 at 30.) The court agrees that Nesbitt's Ground Nine sentencing sheet error claims are not cognizable in this case. See Drummond v. South Carolina, C/A No. 2:07-3031-TLW-RSC, 2008 WL 3849388, at *10 (D.S.C. Aug. 18, 2008) (order accepting and incorporating report and recommendation finding petitioner was not entitled to habeas relief on his claim associated with a sentencing sheet scrivener's error).



However, Nesbitt's response does not challenge the respondent's argument that these grounds fail to state cognizable habeas claims.

"[I]t is not the province of a federal habeas corpus court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); see also Pulley v. Harris, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law.")  The court agrees that, even if these issues were deemed properly exhausted, Nesbitt has failed to demonstrate that Grounds Two and Eight constitute an unreasonable application of clearly established federal law.[7] See Wright v. Angelone, 151 F.3d 151, 158 (4th Cir. 1998) (concluding that petitioner's allegation that state court lacked jurisdiction over certain counts of an indictment rested solely upon the interpretation of state laws and was not cognizable on federal habeas review); Jackson v. Warden, Tyger River Corr. Inst., C/A No. 4:08-2340-CMC-TER, 2009 WL 2588495, at *7 (D.S.C. Aug. 19, 2009) (order adopting and incorporating report and recommendation finding that a habeas claim challenging the validity of indictments under S.C. Code Ann. § 14-9-210 should be dismissed as a non-cognizable state law issue).

Additionally, a part of Ground Ten rests on alleged ineffective assistance of PCR counsel. The respondent argues that Nesbitt's claims alleging ineffective assistance by his PCR counsel are barred by 28 U.S.C. § 2254(i), which provides:  "The effectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding under § 2254."  (ECF No. 28 at 28-29.)  The court agrees that, to the extent Nesbitt attempts to assert ineffective assistance of his PCR counsel "as an independent or free-standing

---

    [7]  The court further observes that the issues presented in Grounds Two and Eight were not raised in Nesbitt's direct appeal, and were not ruled upon by the PCR Court.  (ECF No. 28-1 at 50-58, 73-74, 155-62.)

PJG

claim, such a claim is not cognizable in federal habeas proceedings." Coburn v. Cartledge, C/A No. 0:12-3653-JFA-PJG, 2014 WL 1366034, at *11 (D.S.C. Mar. 31, 2014). Accordingly, Ground Two, Ground Eight, and the PCR counsel portion of Ground Ten fail to state cognizable habeas claims.

### 4.     Ground Seven

Having concluded that the above-discussed grounds are procedurally defaulted or are not cognizable habeas claims, the court returns to the portion of Ground Seven in which Nesbitt alleges that plea counsel's ineffective assistance resulted in an involuntary guilty plea. (ECF No. 17-1 at 28, 34-36, 38. )

### a.     Controlling Law Regarding Allegations of Ineffective Assistance of Counsel

A defendant has a constitutional right to the effective assistance of counsel. To demonstrate ineffective assistance of counsel, a petitioner must show, pursuant to the two-prong test enunciated in Strickland v. Washington, 466 U.S. 668 (1984), that (1) his counsel was deficient in his representation and (2) he was prejudiced as a result. Id. at 687; see also Williams v. Taylor, 529 U.S. 362, 391 (2000) (stating that "the Strickland test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims").

To satisfy the first prong of Strickland, a petitioner must show that plea counsel's errors were so serious that his performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment to the United States Constitution. With regard to the second prong of Strickland, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. However, to prevail on a claim of ineffective assistance of counsel in connection with a guilty plea, the Strickland test is "some what different." Burket v. Angelone, 208 F.3d 172, 189 (4th



Cir. 2000). To establish the prejudice prong of the <u>Strickland</u> test, a habeas petitioner who pled guilty must show " 'that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' "[8] <u>Id.</u> (quoting <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985)) (discussing the <u>Strickland v. Washington</u> standard to establish ineffectiveness of counsel in the context of a guilty plea).

The United States Supreme Court has cautioned federal habeas courts to "guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d)." <u>Harrington</u>, 131 S. Ct. at 788. The Court observed that while "'[s]urmounting <u>Strickland</u>'s high bar is never an easy task[,]' . . . [e]stablishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult." <u>Id.</u> (quoting <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010)). The Court instructed that the standards created under <u>Strickland</u> and § 2254(d) are both "'highly deferential,' and when the two apply in tandem, review is 'doubly' so." <u>Id.</u> (citations omitted). Thus, when a federal habeas court reviews a state court's determination regarding an ineffective assistance of counsel claim, "[t]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard." <u>Id.</u>

Although the Supreme Court has held that a decision containing a reasoned explanation is not required from the state court, in the case at bar this court has the benefit of the PCR court's written opinion, certiorari review of which was denied by the South Carolina Court of Appeals. <u>See,</u>

---

[8] The court observes that the United States Supreme Court recently addressed the prejudice prong of the <u>Strickland</u> test where the plea offer has lapsed or been rejected due to counsel's deficient performance. <u>Missouri v. Frye</u>, 132 S. Ct. 1399 (2012); <u>Lafler v. Cooper</u>, 132 S. Ct. 1376 (2012). However, the Court reaffirmed that the <u>Hill</u> analysis continues to apply to cases "where a defendant complains that ineffective assistance led him to accept a plea offer as opposed to proceeding to trial." <u>Frye</u>, 132 S. Ct. at 1409.



e.g., Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991) (indicating that when a state appellate court affirms a lower court decision without reasoning, the court may look through the later, unreasoned, summary disposition and focus on the last reasoned decision of the state court). Having reviewed the PCR court's order pursuant to the § 2254 standard, the court finds for the reasons that follow that the state court did not unreasonably misapply the Strickland/Hill test in determining that no Sixth Amendment violation occurred.

### b.    PCR Court Testimony and Findings

At the PCR hearing, Nesbitt testified that a public defender, James Hatcher ("Hatcher"), met with him in segregated confinement. (ECF No. 28-1 at 99-100.) Nesbitt testified that Hatcher "had my record with him," however, Nesbitt advised Hatcher that he already had an attorney, did not wish to use a public defender, and that he was not guilty of the alleged charges. (Id.) Nesbitt testified that he met with Hatcher on two occasions, but did not discuss a defense or review discovery materials. (Id. at 102-03.) Nesbitt testified that he did discuss his version of the events leading up to his arrest and detention with Hatcher. (Id. at 103.) Nesbitt testified that he was taken to court unexpectedly on June 23, 2006, and Hatcher informed him that he could enter a *nolo contendere* plea, but failed to explain what that meant. (Id. at 104-06.) Nesbitt testified that Hatcher advised him to take the plea and repeatedly stated that Nesbitt would receive a sentence of probation. (Id. at 106-07, 111-13.) Nesbitt testified that he did not know the charges to which he was pleading or the elements of such crimes and that Hatcher also failed to explain the possible sentence he could receive. (Id. at 109-10.) Nesbitt testified that he did discuss the investigation and possible witnesses with Hatcher before the hearing and watched some surveillance camera footage on a laptop computer. (Id. at 110.) Nesbitt testified that he was taking Lortab the day of the hearing and was transported to court from the hospital. (Id. at 111.) Nesbitt further testified that he would not have entered a *nolo contendere*



plea if the ramifications of such a plea or the maximum sentence had been clear and that he was not advised that he could withdraw his plea. (Id. at 111-13.) On cross-examination, Nesbitt testified that he entered the plea based on Hatcher's advice and the belief that he would get out of jail on probation. (Id. at 124-25.) Nesbitt testified that Hatcher requested probation at the sentencing hearing and advised the court of Nesbitt's medical issues. (Id. at 128-29.)

Hatcher then testified at the PCR hearing, stating that notes from Nesbitt's case file indicate that he initially refused to talk with an investigator from the public defender's office. (Id. at 132-33.) Hatcher further recalled that "it was always a very contentious relationship," however, Nesbitt never produced another attorney and never took the necessary steps to have Hatcher removed from the case. (Id.) Hatcher testified that he met with Nesbitt numerous times and that the case "consumed a lot of my time." (Id. at 133-34.) Hatcher testified that he went over all of the important discovery materials with Nesbitt and attempted to "chase down" leads to establish his innocence. (Id. at 134, 140-41.) Hatcher testified that, given the evidence, he did not believe things would go well at a trial. (Id. at 135.) However, as Nesbitt continually maintained that he was innocent, Hatcher testified that he expected the case to go to trial until the day of the plea. (Id. at 134-35.) Hatcher testified that he explained the meaning of a *nolo contendere* or "no contest" plea to Nesbitt and was able to get the state to offer a plea to a lesser included offense. (Id. at 136, 142-44.) Hatcher testified that he sought and received an order for Nesbitt to be evaluated for competency and it was determined that he was competent to stand trial. (Id. at 137.) Hatcher testified that he was aware of Nesbitt's medical issues and was not concerned about his ability to comprehend what was going on at the plea hearing. (Id. at 138, 150.) Hatcher testified that he did not inform Nesbitt that the charges carried a maximum five-year sentence and did not promise him probation. (Id. at 139.) Instead, Hatcher testified that he informed Nesbitt that he would ask for probation and for a sentence structured to allow Nesbitt



to serve the majority of the sentence at home. (<u>Id.</u>) Hatcher testified that he went over the "different ranges of sentence possibilities" with Nesbitt. (<u>Id.</u> at 146.) Hatcher testified that he was aware of Nesbitt's prior criminal history and believed he secured the best deal possible for Nesbitt in the reduced charges. (<u>Id.</u> at 140.) Hatcher testified that he filed an appeal on Nesbitt's behalf, which he believed was denied. (<u>Id.</u>)

In rejecting Nesbitt's claim that Hatcher's ineffective representation resulted in an involuntary no contest plea, the PCR court found that Hatcher's testimony was more credible than Nesbitt's testimony. (<u>Id.</u> at 160.) The PCR court found that Hatcher "thoroughly discussed the elements of the crimes, possible sentences, and reviewed discovery" with Nesbitt and "successfully negotiated with the State"on his behalf. (<u>Id.</u>) The PCR court found that Hatcher offered mediation on Nesbitt's behalf and found no errors on Hatcher's part which would have led to an involuntary plea. (<u>Id.</u>) The PCR court found the allegation of an involuntary plea to be conclusively refuted by the record and that Nesbitt failed to carry his burden of proving that his *nolo contendere* plea was not freely and voluntarily entered. (<u>Id.</u>) The PCR court found that Nesbitt showed "no reason why he should be allowed to depart from the truth of the statements made during his plea hearing." (<u>Id.</u> at 161.) Accordingly, the PCR court denied relief. (<u>Id.</u>)

### c.    Conclusion

Upon thorough review of the parties' briefs and the record in this matter, the court finds that Nesbitt cannot demonstrate that the PCR court unreasonably misapplied clearly established federal law as decided by the Supreme Court in rejecting this claim or that the PCR court made objectively unreasonable factual findings. <u>See</u> <u>Williams</u>, 529 U.S. at 410; 28 U.S.C. § 2254(d), (e)(1). As observed by the <u>Harrington</u> court, "[t]he pivotal question is whether the state court's application of



the <u>Strickland</u> standard was unreasonable. This is different from asking whether defense counsel's performance fell below <u>Strickland</u>'s standard." <u>Harrington</u>, 131 S. Ct. at 785.

In response to the respondent's motion for summary judgment, Nesbitt essentially reiterates facts already presented in his Petition as support for his claims of ineffective assistance of counsel.[9] (ECF No. 32.) Upon careful review of the transcript and the PCR court's order, for all of the reasons discussed by the PCR court, the court concludes that Nesbitt has failed to establish that Hatcher's actions were error, much less that they were objectively unreasonable such that it rendered his performance deficient. Therefore, Nesbitt has not shown that the PCR court's analysis of these issues misapplied clearly established federal law or, even if there was an error, that it was unreasonable. See <u>Williams</u>, 529 U.S. at 410; <u>see also</u> <u>Harrington</u>, 131 S. Ct. at 785.

## RECOMMENDATION

For the foregoing reasons, the court recommends that the respondent's motion for summary judgment (ECF No. 27) be granted and Nesbitt's Petition denied.

July 7, 2014
Columbia, South Carolina

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

---

[9] To the extent that Nesbitt is requesting that the court consider additional evidence in support of his claims, the court observes that its review for habeas corpus purposes is generally limited to the evidence that was placed before the state court. See <u>Cullen v. Pinholster</u>, 131 S. Ct. 1388, 1398, 1400 n.7 (2011); <u>see also</u> 28 U.S.C. § 2254(d)(2). Nesbitt has not established that any exception to this general rule applies here. See <u>Cullen</u>, 131 S. Ct. at 1400-01; <u>see also</u> 28 U.S.C. § 2254(e)(2).

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"   Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).